UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY B.[1],

       Plaintiff,    Civil Action No.: 25-10800

v.          David R. Grand[2]
           United States Magistrate Judge

COMMISSIONER OF,
SOCIAL SECURITY,

       Defendant.

_____/

## <u>OPINION AND ORDER ON CROSS-MOTIONS<br>FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)</u>

Jeffrey B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions and consented to the undersigned as presider pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 5).

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 5).

Act.   Accordingly, the Court will **GRANT** the Commissioner's Motion for Summary Judgment **(ECF No. 11)** and **DENY** Plaintiff's Motion for Summary Judgment **(ECF No. 9)**.

### I.   Background

Plaintiff was 41 years old at the time of his application on Dec 30, 2021, and at 5'10" tall weighed between 211 and 230 pounds during the relevant period.  (PageID.60, 124, 294).[3]  He completed high school.  (PageID.295).  He had no relevant work prior to the alleged onset of disability.  (PageID.62-63).  He now alleges disability resulting from a "heart attack [in] 12/2020, 1 stent placed, seizures, degenerative disc disease, pinched nerves, carpal tunnel both wrist[s], neuropathy both legs and feet, difficulty walking [and] uses cane, loss of grip and strength in both hands, sleep apnea."  (PageID.294) (cleaned up).

After Plaintiff's application for SSI was denied at the initial level on August 25, 2022, and on reconsideration on March 8, 2023 (PageID.123, 140), he timely requested an administrative hearing, which was held on January 16, 2024, before ALJ Kari Deming.  (PageID.55, 178).  Plaintiff, who was represented by attorney Patrick Cahill, testified at the hearing, as did vocational expert ("VE") Kelly Stroker.  (PageID.55).  In a written decision dated January 29, 2024, the ALJ found that Plaintiff is not disabled under the Act.  (PageID.39-49).  On January 22, 2025, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

(PageID.22).  Plaintiff filed for judicial review of the final decision on March 21, 2025. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## II.     The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively

presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 30, 2021, his application date. (PageID.41). At Step Two, the ALJ found that Plaintiff has the following severe impairments: "coronary artery disease (CAD) status post stenting and heart failure, degenerative disc disease of the cervical and lumbar spine, DeQuervain's tenosynovitis, obesity, obstructive sleep apnea (OSA), seizures, and tarsal tunnel syndrome." (*Id.*). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.42-43).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding,

4

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he must be allowed to optionally alternate between sitting and standing once per hour, may optionally use a cane whenever ambulating, while lifting/carrying up to 5 pounds with the free hand, can occasionally balance, stoop, crouch, crawl, kneel, and climb stairs or ramps, but must avoid climbing ropes, ladders, or scaffolds, can frequently handle, finger and operate foot pedals and must avoid concentrated exposure to extremes of temperature, humidity and respiratory irritants, such as fumes, dusts and noxious odors. He also must avoid exposure to workplace hazards, such as vibrating tools, commercial driving, moving mechanical parts and high, exposed places.

(PageID.43-47).

At Step Four, the ALJ determined that Plaintiff has no past relevant work. (PageID.47).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Plaintiff can perform a significant number of jobs that exist in the national economy. (PageID.48).  As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.49).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to his conditions and resulting limitations.   Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### III.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).   The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).   "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*.  (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.    Substantial evidence … is 'more than a mere scintilla.'" *Id.*  (internal citations omitted).   Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*  (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).   The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations

6

omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."   *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

IV.   **Analysis**

A.   ***Substantial Evidence Supports the ALJ's Evaluation of Dr. Khater's Medical Source Opinion Evidence***

In his motion for summary judgment, Plaintiff argues that the ALJ failed to conduct a proper supportability and consistency analysis of Dr. Mona Khater's ("Dr. Khater") medical opinion, which she found unpersuasive.  (ECF No. 9, PageID.1592-1600).

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision.  20 C.F.R. §§ 404.1520c(b)(2).  As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be."  20 C.F.R. §§ 404.1520c(c)(1).  As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."   20 C.F.R. §§ 404.1520c(c)(2).   "The regulations require that the ALJ sufficiently articulate his reasoning for his persuasiveness findings."  *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024 WL 992160, at *3 (E.D.

7

Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 902 (E.D. Mich. 2021)).   In this case, the Court finds that the ALJ reasonably evaluated the supportability of Dr. Khater's opinion, and that substantial evidence supports her conclusion that Dr. Khater's opinion is unpersuasive.

Dr. Khater is Plaintiff's treating physician and provided a medical source statement regarding Plaintiff's physical capacity from October 27, 2023.  (PageID.1475-78).  The statement is in checkbox and short fill-in-the-blank format, and the only significant amount of writing is on the first page of the opinion as follows:

(PageID.1475). [4]

---

[4] The Court reads the form to say:

> 2. Diagnoses: degenerative disc disease – COPD
> chronic pain – seizure disorder – CAD – myocardial infarction

Dr. Khater completed the rest of the assessment using checkboxes and single-word fill-in-the-blanks, indicating that Plaintiff is likely to be "off task" 25% or more of the day, is "incapable of even low stress jobs," and can only walk a half-block "without rest or severe pain." (PageID.1476).  She marked that Plaintiff can only sit or stand for 45 minutes at one time and for less than 2 hours "total in an 8-hour working day (with normal breaks)." (PageID.1476-77).  Dr. Khater also marked that Plaintiff needed approximately 10 minutes of "walking around" every 90 minutes during "during an 8-hour workday," and that every 2-3 hours, Plaintiff would "need to take unscheduled breaks" for an "average" of 30 minutes "before returning to work." (*Id.*).  Dr. Khater found that "with prolonged sitting," Plaintiff's legs should be elevated to "heart-level."  Dr. Khater opined that Plaintiff can never "lift and carry" more than 10 pounds and can only occasionally lift less than 10 pounds "in a competitive work situation." (*Id.*).  Dr. Khater also marked that Plaintiff can never "twist, stoop (bend), crouch/squad, climb ladders, [or] climb stairs," and that Plaintiff had no limitations in hand manipulations or reaching. (*Id.*).  Finally, Dr. Khater opined that Plaintiff's "impairments" are "likely to produce 'good days' and 'bad days,'" but did not indicate how often Plaintiff "is likely to be absent from work as a result of the impairments or treatment." (*Id.*).

The ALJ found Dr. Khater's opinion "not persuasive," stating:

> [These findings] appear to be an understatement of the claimant's

---

3. Prognosis: fair
4. [S]ymptoms: chest pain recurrent – [illegible] joint pain – fatigue [illegible]
5. [P]ain: chest pain – back pain
6. Identify the clinical findings and objective signs: Degenerative disc disease on MRI spine. Abnormal cardiac [illegible] - Cardiac stent in place

abilities given the mixed record on imaging and in the many physical exams. There is insufficient support for allegations that the claimant cannot lift 10 pounds, that he can only sit for 2 hours, or that he has to elevate his legs on a regular basis. One might expect to see more extensive findings of edema, arm weakness, atrophy and wasting across multiple exams if the claimant were so limited. This source marshalled little if any objective evidence in support of his conclusions, instead offering her findings in a conclusory "check the box" format and failed to create a nexus between specific objective findings from imaging or exams and the claimed limitations. These statements are also unsupported by other opinion evidence from any other clinician. It appears she merely accepted the claimant's subjective allegations in an uncritical and unquestioning fashion when a careful review of the totality of the evidence per SSR 16-3p shows reason to doubt these same allegations.

(PageID.47).

Based on the above, Plaintiff contends that the ALJ failed to properly evaluate Dr. Khater's opinion, but the Court finds no reversible error in this regard.

Plaintiff argues that "Dr. Khater's opinion is both supported and consistent" with the record evidence and therefore the ALJ was wrong to find it unpersuasive. Plaintiff recites a litany of evidence in favor of his conclusion that Dr. Khater's opinion is supported by and consistent with the record evidence as follows:

> As to [Plaintiff]'s spinal impairment, a 2021 MRI revealed degenerative changes including a moderate broad-based protrusion at L5-S1 narrowing the left lateral recess. [] The following year, a CT of [Plaintiff]'s cervical spine similarly revealed mild reversal of the cervical lordosis and mild narrowing and osteophytosis. [] [Plaintiff] was then referred by Dr. Khater to the Pain Clinic of Michigan to address his ongoing complaints of back pain. []. During physical examination at his first appointment on July 14, 2023, [Plaintiff] demonstrated decreased lordosis and moderately reduced range of motion in his lumbar spine. [] Facet loading test was positive bilaterally. [] [Plaintiff] experienced pain with flexion, extension, and rotation of the lumbar spine. [] He was also assessed to have reduced strength in the bilateral lower extremities and his gait was noted to be

10

in forward flexion with ambulation. [] [Plaintiff] returned to the Pain Clinic for three additional appointments in 2023. [] During each physical examination, weakness was noted in the bilateral lower extremities. [] Examination of the lumbar spine revealed decreased lordosis and moderately reduced range of motion. [] Facet loading and straight leg raise tests were positive bilaterally. [] [Plaintiff] experienced pain with flexion, extension, and rotation of the lumbar spine. [] He also presented with reduced strength in the bilateral lower extremities and his gait was noted to be in forward flexion with ambulation. [] Finally, a November 7, 2023 x-ray of the lumbar spine revealed mild degenerative changes. []

As to [Plaintiff]'s cardiological impairment, the record reflects significant development since he experienced a heart attack in September 2020 and underwent left heart catheterization with stent placement the following month. [] A November 2020 echocardiogram returned abnormal results, specifically an aneurysm of the mid anteroseptal and mid inferoseptal myocardium, hypokinesis of the basal-mid inferolateral, anterolateral, and apical lateral myocardium and reduced systolic function and estimated ejection fraction. [] [Plaintiff] reported to the Emergency Department on August 5, 2022, where a stress test was conducted and was positive for ischemia. [] During his hospitalization, an echocardiogram revealed mildly dilated right atrium. [] [Plaintiff] then underwent left heart catheterization on August 8, 2022, which reflected a largely patent stent but ongoing minimal narrowing in the left anterior descending artery and left circumflex artery. [] A follow-up echocardiogram revealed reduced global systolic function in the left ventricle and evidence of diastolic dysfunction. [] The following month, [Plaintiff] reported to the Emergency Department complaining of dizziness and vertigo. [] He related feeling "like things are spinning around" and indicated exacerbated symptoms when standing. [] Mild ataxia was noted during physical examination. [] An echocardiogram revealed mildly reduced systolic function in the left ventricle, increased cavity size in the right ventricle, increased thickness of the ventricular septum, and a positive agitated saline study in the atrial septum.

(ECF No. 9, PageID.1596) (citations omitted).

Despite Plaintiff's recitation of evidence he believes supports Dr. Khater's opinion, the Court's role is not to re-weigh the evidence. Indeed, the law is clear that, if the

11

Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (6th Cir. 1994) (citations omitted). The question thus is not whether Plaintiff can identify evidence supporting Dr. Khater's opinion, but rather, whether the ALJ's conclusion that Dr. Khater's opinion is unpersuasive is supported by substantial evidence. The Court finds that it is.

First, as to supportability, the ALJ reasonably concluded that Dr. Khater "marshalled little if any objective evidence in support of [her] conclusions, instead offering her findings in a conclusory 'check the box' format and failed to create a nexus between specific objective findings from imaging or exams and the claimed limitations." (PageID.47). Dr. Khater provided no explanation for her opined limitations except for the short list of diagnoses on the first page of the form, which lacked detail. For example, "back pain" and "chest pain" don't explain her specific opined limitations. And "degenerative disc disease" is vague because it doesn't indicate the severity of Plaintiff's condition. Crucially, Dr. Khater does not connect any of the "clinical findings and objective signs," "diagnoses," or "symptoms," to the opined limitations. Even where the form specifically asks for an explanation, Dr. Khater did not provide one. For example, after Dr. Khater marked that Plaintiff is "[i]ncapable of even 'low stress' jobs," she did not fill in the blank that asks her to "explain the reasons for [her] conclusion." (PageID.1476). Relevant caselaw has found that "administrate law judges may properly give little weight to a treating physician's 'check-off form' of functional limitations that 'did not cite clinical test results, observations, or other objective findings.'" *Ellars v. Comm'r of Soc. Sec.*, 647

12

F. App'x 563, 566 (6th Cir. 2016).  In *Ellars*, the court found that "[i]n the 'REMARKS' section of the Physical Capacity Evaluation, Dr. Schall simply noted plaintiff's impairments consisted of severe peripheral vascular disease, coronary artery disease, COPD, depression and anxiety.  These remarks were not sufficient to explain Dr. Schall's findings." *Id.* at 567.  Likewise, Dr. Khater's identification of Plaintiff's diagnoses is insufficient to explain the limitations later marked in checkbox form.  As the regulations on supportability dictate, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."  20 C.F.R. § 404.1527.  In this case, where Dr. Khater didn't provide much evidence in support of her opinion and didn't connect the evidence to the limitations, the ALJ's discussion of that fact was sufficient to discount Dr. Khater's opinion according to the supportability factor.

Plaintiff also argues that the ALJ should have found Dr. Khater's opinion well supported because "Dr. Khater indicated relying on the lumbar spine MRI which revealed degenerative changes and the August 2022 cardiological stress test which returned positive results for ischemia," as well as on "the 2021 lumbar spine MRI which revealed a moderate broad-based protrusion at L5-S1 narrowing the left lateral recess" and the "November 2023 lumbar spine x-ray, which revealed degenerative changes.  (ECF No. 9, PageID.1597, citing PageID.481, 1475, 1480).[5]  But Plaintiff's argument mischaracterizes Dr. Khater's

---

[5] Here, Plaintiff also alleges that "Dr. Khater considers objective evidence which the ALJ does not consider," which amounts to "selective cherry-picking of the record."  (ECF No. 9, PageID.1597).

opinion.   For instance, while Dr. Khater does mention an MRI of the spine showing degenerative disc disease, there's no mention of an x-ray or a stress test, nor any of the specific findings that Plaintiff references, such as the findings of a "moderate broad-based protrusion at L5-S1 narrowing the left lateral recess."   Further, while "degenerative disc disease" could be responsible for Dr. Khater's opined limitations, she does nothing to connect the dots between that diagnosis and her opined limitations.   The ALJ found "degenerative disc disease" is a severe impairment (PageID.41) and it is one of the reasons Plaintiff gives for his alleged disability (PageID.294), but it does not, without more, explain Dr. Khater's limitations.   The mention of an MRI showing "degenerative disc disease," without any connection to a claimant's opined limitations does not create the requisite nexus between objective findings and those limitations.   *See Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *8 (6th Cir. June 12, 2024) ("The ALJ's determination that a medical opinion with less than a sentence of explanation for its conclusions had little supportability and therefore limited persuasiveness was reasonable.").   It is not enough for Dr. Khater to list all of Plaintiff's severe impairments to justify any limitation she suggests. Dr. Khater did not provide an explanation for her opined limitations beyond listing vague symptoms, such as "chest pain" or the diagnosis of "degenerative disc disease," which, without more, the ALJ reasonably found does not support her opined limitations.

Next, as to consistency, the ALJ wrote that Dr. Khater's limitations were "an

---

As stated previously, however, the ALJ does not need to cite every piece of evidence, *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006), and the Court's job is to evaluate whether substantial evidence supports her position, even if substantial evidence also supports an opposing position. *Supra* at 12.

understatement of the claimant's abilities given the mixed record on imaging and in the many physical exams." (PageID.47). In particular, she wrote that "[o]ne might expect to see more extensive findings of edema, arm weakness, atrophy and wasting across multiple exams if the claimant were so limited" to contrast Dr. Khater's opinion that Plaintiff "cannot lift 10 pounds, that he can only sit for 2 hours, or that he has to elevate his legs on a regular basis." (*Id.*). Although the ALJ did not cite the specific parts of the record to which she referred, she clearly identified and discussed those same physical exams earlier in the RFC. For instance, the ALJ wrote that "[f]indings on physical exam from this time were normal and [Plaintiff] had normal muscle strength with no reference to edema, gait problems, neurologic deficits, or somnolence," citing a physical exam on February 15, 2022, that found "[m]uscle strength and tone are normal" and "[n]o edema." (PageID.45, 847). Physical exams on October 12, 2020, April 12, 2021, October 16, 2023, also found "[m]uscle strength and tone are normal" and "[n]o edema." (PageID.865, 972, 1445). And on November 9, 2023, a physical exam recorded normal "motor strength and tone," "no contractures, malalignment, tenderness, or bony abnormalities and normal movement of all extremities," and "normal gait and station." (PageID.1514). In opposition, Plaintiff points to three visits to a pain clinic in 2023, which all noted "4+/5" "[w]eakness in bilateral lower extremities," and a gait "in forward flexion with ambulation." (ECF No. 9, PageID.1596, citing PageID.1417, 1432, 1440). Plaintiff also points to an exam in 2022, which found "mild ataxia," though that exam also found that "[b]ulk and tone are normal. Strength is normal. Gait: Able to stand and walk without any major difficulty." (ECF No. 9, PageID.1596, citing PageID.1145). But again, although there may be some evidence

that is consistent with Dr. Khater's opinion, substantial evidence of Plaintiff's mild findings on physical exams – including from some of the very records on which Plaintiff relies – supports the ALJ's conclusion that Dr. Khater's opined physical limitations are not consistent with the record.

Further, substantial evidence supports the ALJ's conclusion that the "mixed" imaging was not consistent with Dr. Khater's opined limitations. The ALJ noted that "a set of April objective findings indicated poor reflexes in the arms and legs, point tenderness in the lumbar spine, and decreased sensation in the hands and legs, but a normal gait, no weakness, no pitting edema, negative Romberg testing, and no somnolence." (PageID.45, citing PageID.993-94, 997-98) ("Reflexes are 2+ poor upper extremities as well as 2+ knees and 1+ ankles bilaterally. There is no clonus… Motor exam shows no weakness or tremor or fasciculation. There is no pronator drift. No focal weakness in the arms or legs. Gait is normal. Walking is normal. There is no ataxia. Romberg test is negative."). On April 25, 2021, an MRI showed only "mild findings." (PageID.481) ("L5-S1 disc mildly narrow. Moderate relatively broad-based subligamentous protrusion… No significant foraminal extension. L4-5 [and L3-4, L2-3, L1-2] disc intact. Neural foramina patent."). A CT of the cervical spine on August 13, 2022 showed a "mild reversal of the normal cervical lordosis. No spondylolisthesis…" (PageID.1172). D7F/71-72, 75-76). Even the imaging cited by Plaintiff does not substantially support Dr. Khater's opined limitations. For example, Plaintiff points to an x-ray of the spine conducted in November of 2023, showing "Vertebral bodies are well preserved. Mild degenerative changes. Disc spaces not remarkable. Flexion-extension views and limited range of motion. No evidence for

16

instability. SI joints preserved." (ECF No. 9, PageID.1596, citing PageID.1480).  In sum, while some imaging may be consistent with Dr. Khater's limitations, the ALJ reasonably concluded that a substantial amount of the imaging is not consistent with Dr. Khater's opined limitations.

Next, Plaintiff argues that, by not adopting Dr. Khater's medical source opinion, the ALJ exceeded her role by "playing doctor."  For example, Plaintiff objects that the ALJ "improperly substituted her own medical opinion for that of a treating source" when she stated that "[o]ne might expect to see more extensive findings of edema, arm weakness, atrophy and wasting across multiple exams if the claimant were so limited." (ECF No. 9, PageID.1596, citing PageID.47).  But it is the ALJ's job to evaluate the relationship of symptoms and diagnoses to work restrictions. *Luukkonen v. Comm'r of Soc. Sec.,* 653 F. App'x 393, 401 (6th Cir. 2016) ("The ALJ never disagreed with or attempted to refute the diagnoses of the medical experts; rather, the ALJ disagreed with those experts' conclusions regarding Plaintiff's capacity to work.").  Here, the ALJ did not determine whether Plaintiff had a diagnosis of edema or atrophy or symptoms of arm weakness.  Rather, the ALJ determined that the lack of those diagnoses and symptoms did not support the work restrictions that Dr. Khater suggested.  Therefore, the ALJ did not err in her evaluation of the relationship between the diagnoses and symptoms and the proposed work restrictions.[6]

---

[6] The cases Plaintiff cites in support of his claim that the ALJ "improperly substituted her own medical opinion for that of a treating source" go more to Plaintiff's next point, namely, that the ALJ was wrong to not rely on the only medical source opinion.  The Plaintiff cites *Allen v. Comm'r of Soc. Sec.*, No. 12-15097, 2013 WL 5676254, at *15 (E.D. Mich. Sept. 13, 2013), *report and recommendation adopted*, No. 12-15097-DT, 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013), which found that the ALJ's opinion was not supported by substantial evidence because it "was not

17

Next, Plaintiff raises the issue that the ALJ did not rely on any medical source opinion evidence.  However, as Plaintiff concedes (ECF No. 12, PageID.1632), there is no rule requiring an ALJ to rely on a medical opinion source.  "The Sixth Circuit has consistently and explicitly rejected the argument that an ALJ *must* elicit a medical opinion in promulgating an RFC." *Chamberlin v. Comm'r of Soc. Sec.*, No. 4:19-CV-10412, 2020 WL 4577146, at *15 (E.D. Mich. Jan. 31, 2020) (emphasis in original), *report and recommendation adopted*, No. 19-10412, 2020 WL 2300240 (E.D. Mich. May 8, 2020) (collecting cases).  As already discussed, "determining how certain diagnoses and symptoms bear on a claimant's capacity to work is not exclusively a 'medical judgment,' but a matter explicitly within the ALJ's purview." *Luukkonen*, 653 F. App'x at 401.  *See also Hall v. Comm'r of Soc. Sec.*, No. CV 22-11281, 2023 WL 3931490, at *6 (E.D. Mich. Mar. 21, 2023), *report and recommendation adopted sub nom. Hall v. Kijakazi*, No. 22-11281, 2023 WL 3534369 (E.D. Mich. May 18, 2023) ("To the extent [plaintiff] is suggesting that the ALJ was not competent to determine functional limitations from her review of the record, she is mistaken, as that is precisely an ALJ's function.").  In *Hall*, the District Court found no error where the ALJ rejected all the medical opinion evidence. (*Id.*).  Likewise, in the present case, the ALJ did not err simply because she found the only medical opinion evidence in the record to be unpersuasive.

Finally, Plaintiff argues that the ALJ erred because "[t]his case includes raw medical

---

based on any medical opinion but was apparently formulated based on the ALJ's own independent interpretation of the medical data of record." *Allen*, 2013 WL 5676254, at *15.  For the reasons discussed below, the Court disagrees.

data, in the form of MRIs, x-rays, cardiological stress tests, and echocardiograms," which "this Court has considered highly specialized medical data requiring an expert to address." (ECF No. 9, PageID.1599).  Although this case contains MRIs, x-rays, cardiological stress tests, and echocardiograms, Plaintiff does not explain how any of that "raw medical data" necessitated a different RFC.  And although "it very well could be the case that without a medical opinion, the ALJ's RFC will lack substantial evidence… the failure in such cases is not simply the missing medical opinion but because the ALJ has failed to adequately explain how the extant evidence translates into the RFC's functional limitations." *Charbonneau v. Comm'r of Soc. Sec.*, No. 2:18-CV-10112, 2019 WL 960192, at *17 (E.D. Mich. Jan. 11, 2019), *report and recommendation adopted*, No. 18-10112, 2019 WL 952736 (E.D. Mich. Feb. 27, 2019).

In this case, however, the ALJ's decision suffers from no such infirmity.  Rather, in crafting the RFC, the ALJ relied upon objective evidence that "can be translated into functional limitations, even by a lay person."  *Chamberlin v. Comm'r of Soc. Sec.*, No. 19-10412, 2020 WL 2300240, at *3 (E.D. Mich. May 8, 2020).  Plaintiff cites *Chamberlin* to contrast with this case, but here, like in *Chamberlin*, "much of the evidence that the ALJ reviewed was not complicated diagnostic and/or high-specialized medical data… Rather, the ALJ considered a large amount of objective medical findings that can be translated into functional limitations, even by a lay person."  *Id.*  Indeed, the ALJ here relied on many of the same types of objective evidence relied upon by the ALJ in *Chamberlin*.  For example, the *Chamberlin* court found that the ALJ's "findings regarding Chamberlin's strength and range of motion and the conservative treatment recommended by his medical providers are

19

relatively straightforward and do not require expert medical interpretation…" *Id.* at *4. Here, the ALJ similarly heavily relied on "objective findings [that] indicated poor reflexes in the arms and legs, point tenderness in the lumbar spine, and decreased sensation in the hands and legs, but a normal gait, no weakness, no pitting edema, negative Romberg testing, and no somnolence." (PageID.45, citing PageID.993-94, 998-999) ("Motor exam shows no weakness or tremor or fasciculation. Gait is normal. Walking is normal. There is no ataxia. Romberg test is negative…. Decrease to light touch and pin prick in hands and legs bilaterally… Multiple point tenderness in lower spine.). The ALJ referenced another exam that "again displayed decreased sensation in [Plaintiff's] hand and legs with point tenderness in the low spine and poor reflexes but [Plaintiff] had a normal gait, no weakness, no pitting edema, negative Romberg testing, and no somnolence." (PageID.45, citing PageID.1001-02) ("No focal weakness in the arms or legs. Gait is normal. Walking is normal. There is no ataxia. Romberg test is negative… decrease to light touch and pin prick in hands and legs bilaterally… Multiple point tenderness in lower lumbar spine."). Additionally, the ALJ recognized that although Plaintiff visited the ER multiple times between September and December of 2022, "findings on physical exam[s] were largely normal." (PageID.45). First, in September, the medical record reflects "[a]dmitting lab work is essentially unremarkable… EKG reviewed and notable for normal sinus rhythm; no ST elevation or ischemia noted." (PageID.1147). The medical record supports the ALJ's conclusion that during Plaintiff's October visit to the ER, "again findings on physical exam were largely normal and an EKG showed normal sinus rhythm." (PageID.45, citing PageID.1128) ("No objective evidence of ischemia by

electrocardiographic criteria and biomarkers… No arrhythmias or high degree AV block noted, remained in sinus rhythm.  Will increase isosorbide mononitrate… Recommended home BP monitoring.  No further cardiac workup warranted at this time. Patient is stable from a cardiac perspective for discharge.").  Again, in November and December, "findings on exam were again largely unremarkable" and "largely normal."  (PageID.45, citing PageID.1124, 1295-99).  The ALJ's opinion is thus supported by substantial evidence that is understandable to a layperson.

Moreover, the ALJ wasn't interpreting "raw medical data," since it had already been reviewed by technicians.  Plaintiff doesn't identify any specific "raw medical data" that the ALJ interpreted or should have had a doctor interpret, but there are numerous examples of medical data, such as "MRIs, x-rays, cardiological stress tests, and echocardiograms" that were already evaluated by physicians.  For example, on November 7, 2023, Plaintiff had a spine x-ray, and the evaluating doctor wrote that Plaintiff's "[v]ertebral bodies are well preserved.  Mild degenerative changes.  Disc spaces not remarkable.  Flexion-extension views and limited range of motion.  No evidence for instability.  SI joints preserved." (PageID.1480).  Also on November 7, 2023, Plaintiff had a shoulder x-ray, and the reviewing doctor found, "Shoulder joint fairly well preserved.  AC joint also preserved. The rest of the bones are not remarkable."  (PageID.1481).  That same day, Plaintiff underwent x-rays of his forearm and elbow, which are likewise explained by reviewing doctors.  (PageID.1483-84).  The echocardiogram from May 22, 2021, was likewise reviewed by a doctor who found that "[r]ight and left ankle-brachial indices are normal, measuring 1.0," "[p]hysiologic arterial Doppler analysis does not reveal high-grade focal

21

stenosis or major arterial branch occlusion within either right or left lower extremity" and "[n]ormal right and left ABIs at rest and following exercise." (PageID.861-62). The November 2020 echocardiogram was also reviewed by a doctor before the ALJ received the findings. (PageID.528). While not all of these reports are easily understandable to a layperson, the major findings were translated by a medical professional such that the ALJ use of those records does not constitute her interpreting the raw medical data. And though some other reports, such as the angiograms, might require a medical doctor to translate into layperson's terms, Plaintiff does not explain how any of these might change the RFC. Finally, it is noteworthy that Dr. Khater did not explain the importance of any of the "raw medical data" that Plaintiff asserts the ALJ needed to evaluate with the help of a doctor.

For all of the foregoing reasons, substantial evidence supports the ALJ's evaluation of Dr. Khater's medical opinion.

### B. *The ALJ Did Not Commit Reversible Error in Evaluating Plaintiff's Subjective Complaints*

In her decision, the ALJ recognized that Plaintiff alleged disabling physical symptoms but concluded that his statements were not entirely consistent with the medical evidence. (PageID.44). Plaintiff now challenges the ALJ's evaluation of his subjective complaints, claiming she "used boilerplate language" and improperly relied on objective evidence. (ECF No. 9, PageID.1600-01). The Court disagrees.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating these symptoms. *See Moore v. Comm'r of Soc. Sec.,* 573 F. App'x 540, 542 (6th Cir. 2014); *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921

(6th Cir. 2011).  First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms.  Second, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also* Soc. Sec. Rul. ("SSR") 16-3p, 2016 WL 1119029, at *4 (March 16, 2016).

In evaluating a claimant's symptoms at the second step of the analysis, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record.  *See* SSR 16-3p, 2016 WL 1119029, at *4.  Beyond medical evidence, the ALJ should consider seven factors: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *Id.* at * 7; 20 C.F.R. § 404.1529(c)(3)(i)-(vii); 20 C.F.R. § 404.929(c)(3)(i)-(vii).  The ALJ need not exhaustively discuss each of these factors – or all of the evidence in the record, *see Robinson v. Comm'r of Soc. Sec.*, No. 20-12117, 2022 WL 1043869, at *3 (E.D. Mich. Jan. 18, 2022), but her decision "must contain specific reasons for the weight given to the individual's symptoms,

23

be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  SSR 16-3p, 2016 WL 1119029, at *9.

In this case, the ALJ found that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that "the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (PageID.44).  The ALJ then recounted the "non-exhaustive list of factors" discussed above before conducting her analysis of Plaintiff's subjective complaints as follows:

> A review of the claimant's extensive course of care shows a fairly routine and conservative pattern. While he required emergent care on multiple occasions, he was often treated and released relatively quickly with exams that showed limited deficits. While the claimant displayed significant deficits across many physical exams, instances of gait problems were isolated as was weakness and deficits in ranges of motion, and he did not commonly display edema, atrophy, somnolence/sleepiness, or neurologic compromise. There are indications that medications such as Gabapentin largely worked, that cutting back on smoking helped, and that adherence to CPAP therapy helped him sleep well. The claimant has alleged an ongoing need to elevate his legs during the day and that he naps or rest during the day due to excessive somnolence, but these allegations lack support from findings on exam such as edema/swelling, or drowsiness, or the longitudinal records of complaints to treating clinicians in review of systems documentation. There are no references, for example, that the claimant requires compression stockings and as noted above the office visit notes indicate CPAP helped the claimant get a good night's sleep.
>
> Additionally, in choosing not to offer any written accounts, such as completed Function Reports or Questionnaires, the claimant lost the opportunity to provide additionally convincing detail and function-by-function specifics regarding the allegedly disabling symptoms and

24

limitations. Overall, there is limited evidence (and significant evidence to the contrary) of impairments sufficiently severe as to interfere with the performance of at least sedentary work with allowance for use of cane and a sit/stand option as well as a range of narrowly tailored and symptom specific postural, manipulative, and environmental limitations. While no one factor cited above is dispositive, and each perhaps on its own does not establish anything conclusively, the totality of the facts and circumstances cited above made it difficult for me to rely heavily on the claimant's subjective complaints. . . .

(PageID.44).

Plaintiff makes three objections to the ALJ's analysis. First, Plaintiff states that the "ALJ used boilerplate language in her evaluation of [Plaintiff's] subjective complaints," referring to the following language from the ALJ's decision: "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (ECF No. 9, PageID.1600, citing PageID.44).  Although Plaintiff argues that "[t]he Sixth Circuit has found this language can be reversible error," Plaintiff ignores the paragraphs of substantive analysis that follow the "boilerplate language."  In other words, while boilerplate language without analysis may be reversible error, that doctrine simply does not apply here.  Indeed, as discussed below, the Court finds that the ALJ conducted a reasonably supported substantive evaluation of Plaintiff's complaints, utilizing a number of the relevant factors.

Next, Plaintiff objects that "the ALJ merely summarizes portions of [Plaintiff's] record of treatment."  (ECF No. 9, PageID.1601, citing PageID.44-46).  Plaintiff's

argument lacks merit. There is nothing objectionable about the ALJ summarizing the record in support of her conclusion. Moreover, the ALJ's "summary" supports her conclusion that, contrary to Plaintiff's subjective complaints, "the claimant's extensive course of care shows a fairly routine and conservative pattern." (PageID.44-46). For example, the ALJ wrote that while Plaintiff "required emergent care on multiple occasions, he was often treated and released relatively quickly with exams that showed limited deficits." (PageID.44). As the Court previously discussed, the Emergency Room visits in September, October, November, and December of 2022 revealed largely normal physical exams, no prolonged stays, and no significant changes to treatment. (*See supra* at 20). The ALJ also wrote that "[w]hile [Plaintiff] displayed significant deficits across many physical exams, instances of gait problems were isolated as was weakness and deficits in ranges of motion, and he did not commonly display edema, atrophy, somnolence/sleepiness, or neurologic compromise." (PageID.44). As previously discussed, physical exams on October 12, 2020, April 12, 2021, October 16, 2023, found "[m]uscle strength and tone are normal" and "[n]o edema." (PageID.865, 972, 1445). And on November 9, 2023, a physical exam recorded normal "motor strength and tone," "no contractures, malalignment, tenderness, or bony abnormalities and normal movement of all extremities," and "normal gait and station." (PageID.1514). The record does not reflect that Plaintiff regularly complained of exhaustion or excessive sleepiness, either. The fact that the ALJ's analysis of the record evidence includes a "summary" of the evidence does not impair the Court's understanding of the analysis. And, as discussed above, the ALJ's analysis of the opinion evidence regarding the conservative course of treatment is substantially supported by the

26

evidence.

In the same paragraph as Plaintiff objects to the ALJ's summary, he writes that "[t]he ALJ's summary is also incomplete, as it has no consideration of [Plaintiff's] treatment for his back issues." (ECF No. 9, PageID.1601). But the ALJ noted specifically that "instances of gait problems were isolated as was weakness and deficits in range of motion," all of which are relevant to Plaintiff's "back issues." (PageID.44). The ALJ also appropriately noted records which indicated that Plaintiff had been "able to mow the lawn" and that by June 2023, he was "doing very well" and admitted he was "getting out of the house and taking walks on a regular basis." (PageID.45) (citing PageID.847, 1201). As for any related evidence Plaintiff may have wanted the ALJ to discuss, the ALJ does not have to specifically reference every piece of evidence in the record. *See Kornecky*, 167 F. App'x at 508.

Finally, Plaintiff objects that "[t]he ALJ's focus on [Plaintiff's] treatment history and the results of clinical and diagnostic studies suggest she rejected his subjective symptom testimony because it was not directly supported by the objective evidence," which the Plaintiff alleges is improper according to 20 C.F.R. § 404.1529(c)(2) and relevant caselaw. (ECF No. 9, PageID.1602). However, Plaintiff fails to recognize that the regulatory guidance only cautions the ALJ against relying "solely" on objective medical evidence "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," and therefore "we will carefully consider any other information you may submit about your symptoms." 20 C.F.R. § 404.1529(c)(3). The regulations affirmatively instruct ALJs to use objective

27

medical evidence where available, stating, "[o]bjective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."  20 C.F.R. § 404.1529(c)(2).  Moreover, in this case, the ALJ did not solely rely on objective medical evidence but also relied on the other factors.  For example, the ALJ correctly evaluated the fourth factor: "the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  SSR 16-3p, 2016 WL 1119029, at *7.  The ALJ noted that "medications such as Gabapentin largely worked" at relieving physical symptoms.  (PageID.44).  The ALJ also utilized the sixth factor: "any measures other than treatment the individual uses or has used to relieve pain or other symptoms," by noting that Plaintiff does not require compression stockings and "office visit notes indicate CPAP helped the claimant get a good night's sleep."  (*Id.*).  The ALJ also noted that Plaintiff's "shortness of breath had improved since he cut back on smoking," again referencing Plaintiff's walking. (PageID.45).  Therefore, the ALJ correctly relied on medical evidence as well as multiple other factors in evaluating Plaintiff's subjective symptoms, and the Court finds that the ALJ's conclusion as to that matter was supported by substantial evidence.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, that decision will be affirmed.

## V.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's Motion for

Summary Judgment **(ECF No. 11)** is **GRANTED**, Plaintiff's Motion for Summary

Judgment **(ECF No. 9)** is **DENIED**, and that pursuant to sentence four of 42 U.S.C. §

405(g), the ALJ's decision is **AFFIRMED**.


Dated: March 30, 2026                              s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                                  United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2026.

                                                            s/Julie Owens
                                                            JULIE OWENS
                                                            Case Manager